IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>MONICO SANDERS ) | NO. 3:12-cr-00183<br><br>JUDGE RICHARDSON |

# MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 47, "Motion"). Via the Motion, Defendant seeks a reduction of his 144-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 53, "Response"), arguing that Defendant has not shown as required "extraordinary and compelling reasons" for compassionate release or that he is not a danger to the safety of other persons, and that other applicable considerations counsel strongly against compassionate release. Thereafter, Defendant filed a reply (Doc. No. 58).

## BACKGROUND

On November 14, 2012, Defendant was charged in a Superseding Indictment with four counts: Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count One); two counts of Possession with Intent to Distribute a Mixture and Substance

Containing Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two and Four); and Possession of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). (Doc. No. 14). On June 27, 2012, Defendant pled guilty to Count Three pursuant to a plea agreement whereby the parties agreed, pursuant to Rule 11(c)(1)(C), to jointly recommend a sentence that included a term of imprisonment of 144 months. On September 18, 2012, District Judge John T. Nixon sentenced Defendant to the jointly recommended 144-month term of imprisonment on Count Three, and dismissed Counts One, Two, and Four upon motion by the Government. (Doc. No. 31). According to BOP, Defendant's release date is on April 25, 2023. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Nov. 2, 2020).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[1] the district court may under certain circumstances grant a defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

---

[1] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[2] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements

---

[2] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 38.

issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[3]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[4] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[5] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[6]

---

[3] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[4] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court herein resolves the Motion without any need to refer to them.

[5] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

[6] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A). As the Sixth Circuit recently explained:

> Statutory Requirement Two: Before granting a reduced sentence, the court next must "find[ ]" "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). This factor thus leads us right back to § 1B1.13. Beyond the extraordinary-and-compelling-reasons requirement, this policy statement also requires a district court to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and that "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(2)–(3).
>
> Statutory Requirement Three: Even if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with § 1B1.13, the court may not grant the reduction before "considering the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). These ubiquitous factors consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public. *Id.* § 3553(a)(1)–(2).
>
> This last requirement confirms an overarching point: The district court has substantial discretion. The statute says that the district court "may" reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so. *See United States v. Keefer*, ––– F. App'x –––, 2020 WL 6112795, at *3 (6th Cir. Oct. 16, 2020). Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" § 3553(a) factors do not justify it.

*United States v. Ruffin*, -- F.3d--, No. 20-5748, 2020 WL 6268582, at *4 (6th Cir. Oct. 26, 2020).

The (familiar) sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
    - i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
    - ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
- A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
- B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "residual" or "catchall" provision), the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason *other* than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D) (emphasis added).

## THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the prevailing COVID-19 pandemic and his medical condition (*i.e.*, high blood pressure). (Doc. No. 47 at 6-8). Defendant asserts that his high blood pressure places "him at higher risk for serious complications from COVID-19." (*Id*. at 7). He claims that due to his high blood pressure and the danger posed by COVID-19, Defendant "cannot provide self-care and protect himself from COVID-19 while in custody." (*Id.*). He also asserts that this "is especially true in light of the conditions [at his facility], making social distancing impossible and the spread of the virus likely." (*Id.*). As a result, he claims, he has shown "extraordinary and compelling reasons" for his compassionate release under Application Note 1(A)(ii)(I). (*Id*. at 8).

Defendant also argues that the Section 3553(a) factors support granting the Motion. (*Id*. at 8-9). Defendant specifically contends that the time he has currently served (just over 75 percent of his sentence based on the current anticipated release date)[7] "reflect[s] the seriousness of his

---

[7] Defendant has been accruing sentencing credit since September 17, 2012, and thus has served 97.5 months of what, according to BOP's reported anticipated release date, would be a 128-month sentence (reduced from 144 months based on some credit for time served).

offense, would adequately serve the need for deterrence, and it would likewise serve the purposes of further promoting his rehabilitation." (*Id*. at 9).

If the Court were to grant his Motion, Defendant also offers a proposed release plan: Defendant proposes that he "can reside with his mother Tuesday Battle in Hendersonville, TN." (*Id*. at 8).

The Government argues in response that Defendant has not shown "extraordinary and compelling reasons" as required for compassionate release. (Doc. No. 53 at 9-12). The Government first notes that there is "a review of [Defendant's] medical records provided by BOP reveals no information that [D]efendant's cited condition [(*i.e.*, high blood pressure)] places him in a high-risk category for severe illness from COVID-19." (*Id*. at 10). More specifically, the Government argues that "there is no indication in those records of pulmonary hypertension or any other sort of severe, debilitation, or life-threatening form of high blood pressure, only a common form identified as benign essential hypertension" which the Centers for Disease Control ("CDC") merely lists as a condition that *may* increase one's risk of severe illness from COVID-19." (*Id*.). Therefore, the Government argues that Defendant "has failed to show that his assessment for hypertension qualifies as a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility" and thus has failed to show extraordinary and compelling reasons for his release. (*Id*. at 7).

The Government then points out that, although not relied upon by Defendant in his Motion, Defendant's medical records reveal that he suffers from Type 2 diabetes. (*Id*. at 11). The Government concedes that according to CDC guidelines, Defendant's Type 2 diabetes diagnosis could place him at an increased risk of becoming seriously ill if he were to contract COVID-19. (*Id*.). However, the Government asserts that in this case, Defendant's Type 2 diabetes diagnosis

does not rise to the level of extraordinary and compelling reasons, because Defendant's medical records reveal that his Type 2 diabetes is well-managed within BOP. (*Id*. at 12). In Defendant's Reply, Defendant asserts that his Type 2 diabetes diagnosis does rise to the level of an extraordinary and compelling reason despite that it is controlled by medication, and additionally asserts that his obesity also rises to the level of an extraordinary and compelling reason. (Doc. No. 58 at 2-3).

The Government next argues that the Motion should be denied because Defendant has not shown that he would not pose a danger to the community if he were released. (Doc. No. 53 at 14). The Government relies on the circumstances of the underlying offense which involved discharging a firearm during a drug trafficking crime. (*Id*. at 15). The Government also relies on Defendant's criminal history, which includes two violent felony convictions for Aggravated Assault, and a previous firearm charge. (*Id*. at 16). The Government also points to Defendant's conduct while he has been incarcerated, which includes citations for Possessing Unauthorized Items, Refusing to Obey an Order, Use of Drugs and Alcohol, and Possessing a Dangerous Weapon. (*Id*. (citing Doc. No. 53-4)). The Government asserts that "these citations, occurring as recently as May 2019, would suggest the defendant has not changed his behaviors and he is far from rehabilitated." (*Id*.).

The Government further argues that even if the Court were to conclude that Defendant was not a danger to the community, the Motion should be denied because the Section 3553(a) factors militate against granting the Motion. (*Id.* at 14-17). Specifically, the Government points to the nature and circumstances of the offense, as detailed above. The Government also argues that to "release [Defendant] now would fail to promote respect for the law [and] fail to provide just punishment for his crimes" as Defendant has only served 96 months of his sentence, which is "far short of both the mandatory minimum sentence and the negotiated 144 month sentence." (*Id*. at

15). Additionally, the Government asserts that the need for medical care does not weigh in favor of Defendant's release because there is no evidence that his medical conditions are not well-managed in BOP custody. (*Id*. at 16). Finally, the Government contends that service of Defendant's full sentence is necessary in this case "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offenses committed, to afford adequate deterrence to criminal conduct, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." (*Id*. at 16-17).

## ANALYSIS

### I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting her release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As explained above, the Government argues that Defendant has not demonstrated "extraordinary and compelling reasons" for compassionate release. In short, the Court need not decide whether Defendant has demonstrated extraordinary and compelling reasons, because the Court below decides that compassionate release is not available to Defendant even if he were able to demonstrate extraordinary and compelling reasons.

### III. DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

Defendant can be eligible for compassionate release, such that the Court proceeds to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. The Court generally perceives the precise issue to be whether Defendant would pose such a danger *if released* (and not whether he currently poses a danger while incarcerated). "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020). The Court finds that Defendant has not met that burden.

As described above, the Government asserts that the circumstances of the underlying offense, Defendant's prior criminal history, and his conduct while incarcerated all suggest that Defendant would pose a danger to the community if he were released. (Doc. No. 53 at 13-16). In Defendant's Motion, he does not address the danger component of the compassionate release analysis. In Reply, Defendant asserts merely that the "mere existence of a criminal record does not make an individual pose a risk to public safety." (Doc. No. 58 at 3).

The Court notes that it does not presume Defendant would pose a danger to the community based on the mere fact that he has a criminal history, or the mere fact that Defendant is currently incarcerated for a serious offense. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history, the circumstances of the current offense of incarceration, and his recent disciplinary infractions obtained while incarcerated.

Although Defendant was only 25 years old when he was sentenced, he had a Criminal History Category of IV. (Presentence Investigation Report ("PSR") at 22). As the Government points out, Defendant's criminal history includes two violent felonies of Aggravated Assault, one of which involved Defendant's discharge a firearm. (*Id.* at ¶¶ 19-20). Apart from the current

firearm offense, Defendant has previously been charged with Being a Felon in Possession of a Firearm. (*Id.* at ¶ 22). Combined with his current offenses, this criminal record does not convince the Court that Defendant would not pose a danger to the community if released. *See United States v. Serrano*, No. CR 13-4004 RB, 2020 WL 3869475, at *2 (D.N.M. July 9, 2020) (denying motion for compassionate release where the defendant had an extensive criminal history that included violent crimes and firearms offenses); *United States v. Stanard*, No. CR16-320-RSM, 2020 WL 2219478, at *4 (W.D. Wash. May 7, 2020) (denying motion for compassionate release where the defendant's "criminal record reflects multiple convictions for crimes that involve violence or the threat of violence").

Additionally, Defendant has demonstrated an inability to maintain compliant behavior while incarcerated as he has had several disciplinary violations during his incarceration, including possessing a dangerous weapon (*i.e.*, a sharpened metal object) in May 2019. (*See* Doc. No. 53-4 at 1). Moreover, Defendant's underlying offense—possession of a firearm during a drug trafficking crime—involves the very dangerous mix of drugs and firearms. The attendant dangerousness of this offense is evidenced by the fact that Defendant himself was shot multiple times during the commission of the offense. (PSR at ¶¶ 4-8).

Defendant's criminal record, his inability to correct his criminal and otherwise non-complaint behavior demonstrate his repeated disrespect for the law and a likelihood of recidivism. Accordingly, the Court cannot conclude—and indeed Defendant has not even seriously attempted to meet his burden to show—that Defendant would not be a danger to other persons or the community if released.[8]

---

[8] It is not lost on the Court that whether someone is a "danger" within the meaning of U.S.S.G. § 1B1.13 in some cases may be in the eye of the beholder. The notion of a "danger" is not entirely ambiguous and somewhat subjective, with the line between being and not being such a danger being somewhat blurry. But as the beholder called

IV. SECTION 3553(a) FACTORS

Even if Defendant did demonstrate that he would not be a danger to the community if released, the Court would still deny the Motion in consideration of the Section 3553(a) factors, which collectively cut against granting compassionate release for Defendant. The most salient factors are discussed below.

*The nature and circumstances of the offense* cut against compassionate release. As noted above, Defendant discharged a firearm during a drug trafficking crime. This is undoubtedly an offense of a serious nature.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release for the same reasons discussed above in connection with whether Defendant would be a danger if released. Moreover, it is relevant to this particular factor (and the next factor below), that, as the Government notes, Defendant's condition has been managed while in prison and has been taking efforts (imperfect though they may be) to control the spread of COVID-19. *See Ruffin*, 2020 WL 6268582, at *8 (affirming district court's denial of motion for compassionate release for an inmate-defendant with serious medical conditions, in part because he "was receiving regular medical treatment to manage those conditions" and "the prison had adopted sufficient preventive measures to slow the spread" of COVID-19").

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's need for medical

---

upon to make the determination in this case, the undersigned cannot find that Defendant is not a danger; it seems clear to the undersigned that Defendant falls on the "danger" side of that blurry line.

care, which here amounts, in the Court's view, to the need to both manage his existing medical conditions and reduce his risk from COVID-19.

As to the management of Defendant's existing medical conditions, as noted above they have been managed in prison, and the Court sees no basis to conclude that they would be managed better if released.

As for COVID-19, the Court will not act like it knows more than it actually knows. The Court does not know the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone with a more typical medical profile. As a matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[9] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection at USP McCreary, as there are currently 17 active COVID-19 cases in the facility. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last

---

[9] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; and the extent to which COVID-19 may be transmitted via contact with inanimate surfaces.

accessed Nov. 2, 2020). The Court is also willing to assume that Defendant's medical conditions make him prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. For one thing, the Court would merely be speculating as to the extent of the risk of infection at USP McCreary and as to the likelihood of a bad outcome upon infection. For another thing, to say the least, it is not like there in no substantial risk of infection outside of BOP custody. For example, the Tennessee Department of Health reports, in Sumner County, Tennessee (where Defendant proposes to reside if released), 6,598 "confirmed or probable" and 713 "active" cases of COVID-19 as of November 2, 2020. *See Epidemiology and Surveillance Data*, Tennessee Dept. of Health, https://www.tn.gov/content/tn/health/cedep/ncov/data.html (last accessed Nov. 2, 2020).

Additionally, given Defendant's history of criminal activity and his disciplinary infractions during incarceration, Defendant has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital, because under his own theory (and the widely-accepted view worldwide), decreasing his risk of infection upon release from BOP custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing. For all of these reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce his risk from COVID-19.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* also cuts against Defendant. The sentence Defendant now seeks would result in a lower sentence compared to defendants convicted of similar conduct with similar criminal history, as Defendant's charge of conviction has a mandatory minimum of 10 years, and Defendant has served less than 8 years. *See United States v. Kincaid*,

805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions). The Court also notes that this sentencing disparity can weigh against Defendant not only on this factor, but also on other factors. *Ruffin*, 2020 WL 6268562, at *7 ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction."). It is true that Defendant has served a substantial majority of his sentence. But it does not change the fact that the modified sentence he is requesting nevertheless would be disparately low compared to others convicted of the same crime, with its ten-year mandatory minimum sentence. And the disparity would be unwarranted, for the reasons indicated throughout this memorandum opinion.

Accordingly, to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.

Additionally, the requested reduction of the Court's original sentence would also fail to *reflect the seriousness of the offense* Defendant committed and *would not provide a just punishment for his conduct*. It would also undermine the Court's attempt to use the sentence to *promote respect for the law and serve as a deterrent for criminal conduct*.

Notably, Defendant himself agreed, via his Rule 11(c)(1)(C) plea agreement, that his original sentence of 144 months' imprisonment was appropriate.[10] He thus agreed that it was

---

[10] This sentence represented an upward variance on the sole count of conviction, Count Three. That is, the guideline sentence on Count Three was (exactly) 120 months. But presumably in return for the Government's agreement to dismiss other counts that carried the possibility of an additional sentence to which a 120-month sentence on Count Three would have run consecutive, Defendant agreed that an upward variance of 24 months on Count Three was appropriate. For this reason, Defendant can hardly claim that the guideline range (another one of the Section 3553(a) factors) is very probative of what sentence he should ultimately receive and whether it should be reduced to effectively 97.5 months as requested by Defendant.

appropriate under the Section 3553(a) factors and overall standards. The onus is on him to explain why the substantially reduced sentence he now requests would be sufficient under Section 3553(a), and in the Court's view he has failed to do so.

For those reasons, the Court, in its discretion, finds that the Section 3553(a) factors weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that if released, Defendant has not shown that he would not present a danger to other persons or the community. Alternatively, even if compassionate release were potentially available, it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 47) is **DENIED**.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE